**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

TERESA WRIGHT, LYNN RICHARDS,
LIZBETH TINI, EDWARD TINI, SANDRA
BARMCQ, RICHARD BARMCQ, BENITO
GARCIA and IRENE B. GARCIA,

      Plaintiffs,

      vs.                                                                No. CIV 97-1573 JC/JHG

BOARD OF COUNTY COMMISSIONERS
OF DONA ANA COUNTY; and COMMISSIONER
GILBERT APODACA, COMMISSIONER EDUARDO
MEDINA, and COMMISSIONER KENNETH
MIYAGISHIMA, Individually,

      Defendants.

**MEMORANDUM OPINION**

      THIS MATTER came on for consideration of Defendants' Motion to Dismiss (Docket No. 7) and Plaintiffs' Motion for Summary Judgment (Docket No. 9), both filed December 24, 1997. The Court has reviewed the motions, the memoranda submitted by the parties and the relevant authorities. Because all parties have submitted exhibits on both motions, the Court will address both motions under the summary judgment standard and deny Plaintiffs' Motion to Strike Statement of Facts & Portions of Affidavit of Lisa Warren (Docket No. 12).

      Although the federal claims set forth in Count II will be dismissed, the Court will exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state law claims. The Court finds that Plaintiffs are entitled to judgment as a matter of law on the administrative appeal claim in Count III. Because this Court may provide full relief by directing the Board to conduct a

special election on the municipal incorporation issue, Plaintiffs' Count I request to issue a writ of mandamus pursuant to New Mexico state law need not be addressed.

## BACKGROUND

On May 19, 1997, Plaintiffs filed a petition to incorporate an area of Dona Ana County as a municipality to be known as "Spaceport City." Two weeks later, Defendant Board of Commissioners ("Board") ordered that a census be conducted based on this petition. The census found as follows: the 190 acre area had 295 residents with a density of 1.5 people per acre; the petition was signed by owners of 188.5 of the acres; the petition was accompanied by an accurate map; the area was more than five miles outside the boundary of Las Cruces and not within the bounds of any other municipality; and the applicants had deposited $2,300 to pay for the census.

At the July 1, 1997 Board meeting, County Attorney Lisa Warren alerted the commissioners that the specific incorporation statute to be applied by the Board was subject to more than one interpretation. The specific statute, titled "Petition to incorporate area as a municipality; map and money for census," provides as follows:

> A. **The residents of territory proposed to be incorporated as a municipality may petition** the board of county commissioners of the county, in which the greatest portion of the territory proposed to be incorporated lies, to incorporate the territory as a municipality. **The petition shall:**
>
> (1) be in writing;
> (2) state the name of the proposed municipality;
> (3) describe the territory proposed to be incorporated as a municipality; and
> **(4) be signed by either;**
>
>     **(a) not less than two hundred qualified electors**, each of whom shall, on the petition,

>> 1) swear or affirm that he has resided within the territory proposed to be incorporated for a period of six months immediately prior to the signing of the petition and
>> 2) list the street address of his residence; **or**
>
> **(b) the owners of not less than sixty percent of the real estate within the territory proposed to be  incorporated who are not delinquent in their payment of real property taxes.**
>
> B.  The petition shall be accompanied by:
>
> (1) an accurate map or plat which shall show the boundary of the territory proposed to be incorporated; and
> (2) money in an amount determined by the board of county commissioners to be sufficient to conduct a census in the territory proposed to be incorporated. The money shall be deposited with the county treasurer for payment of the census required in Section 3-2-5 NMSA 1978.

N.M.S.A. § 3-2-1 [emphasis added].

The county attorney interpreted this provision to require that only residents may sign an incorporation petition--whether signing as a "qualified elector" under subsection (a) or signing as an "owner of real estate" under subsection (b) of § 3-2-1 A(4). She also asserted that the Spaceport City petition failed to comply with other general petition form technicalities, such as preapproval by the county clerk, which are set forth in N.M.S.A. § 3-1-5 ("Municipalities - General - Petitions"). In spite of Warren's concerns, the Board adopted the census, determined that the petitioners had "met the requirements set forth in the law for incorporation" of Spaceport City, and passed a resolution calling for an election on the incorporation issue to be conducted the first Tuesday in January, 1998.

Four months later, County Manager Fernando Macias revisited Ms. Warren's concerns that there were legal flaws in the Spaceport City incorporation process. At November, 1997, meetings, the Board was informed that the filing of a proper petition for incorporation of a municipality is

jurisdictional, and the commissioners could object to petition sufficiency at any time. Apparently the Board then accepted Mr. Macias' interpretation that the Spaceport City incorporation petition must comply with the requirements of both statutes--the specific requirements of § 3-2-1 and those requirements set forth in § 3-1-5 which are applicable to municipal petitions generally. On this basis, the commissioners by a 3-2 vote rescinded the actions taken at the July 1 meeting. (Minutes of Nov. 12, 1997 Special Meeting at 2-4).

Plaintiffs quickly sprung into action by filing a new "Clerk-approved" formal petition for incorporation just days after the Board's recission. Because the Board again questioned if a "proper" petition and map had been submitted, the commissioners tabled the matter until their December meeting. At a meeting held December 16, 1997, the commissioners again accepted the advice from their county manager and legal counsel that under the general provisions of § 3-1-5, only "qualified electors" are permitted to sign municipal incorporation petitions. Non-resident signatories necessarily cannot meet the definition of "qualified electors."[1] Therefore, the Board determined that the second petition was defective because it, like the first petition, included signatures of owners of the acreage who were not residents of the area to be incorporated.

With the petition having been found "null and void," Plaintiffs were faced with failing to meet the publication deadlines for placing the issue on the upcoming January 6, 1998 ballot. Because the next statutorily-scheduled date for such an election would not occur until 1999,[2] Plaintiffs sought

---

[1] To be a "qualified elector" under § 3-2-6, one must reside within the area proposed for incorporation.

[2] Pursuant to N.M.S.A. § 3-2-5 E, elections for the incorporation of municipalities are to be held only in odd-numbered years.

relief in State district court.  An alternative writ of mandamus was issued, but two days prior to its scheduled return date, Defendants removed this action to federal court.

Plaintiffs initially contended that removal jurisdiction was lacking, but now concede that removal was proper given recent authority.  See City of Chicago v. International College of Surgeons, ___ U.S. ___, 118 S. Ct. 523 (Dec. 15, 1997).  Unfortunately, the resulting delays precluded Plaintiffs, even if they prevailed, from meeting the deadlines for giving published notice of the election so that it lawfully could have been held in January 1998 as originally scheduled.

**ANALYSIS**

The Complaint sets forth three claims:  (I) a writ of mandamus directing the Board to proclaim an incorporation election pursuant to N.M.S.A. § 44-2-1; (II) injunctive relief for violation of federal and state constitutional rights under 42 U.S.C. § 1983 and § 1985; and, (III) an appeal from the determination of the Board pursuant to N.M.S.A. § 3-2-5 F.  Contending that the Spaceport City incorporation petitions are "patently defective, null and void," Defendants seek dismissal of all claims.  In response, Plaintiffs argue that they are entitled to summary judgment in their favor and all requested relief.  The issues presented by either motion are ones of law because the material issues of fact are not in dispute.

Because the Complaint alleges colorable violations of federal constitutional and statutory guarantees, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 such that the case was properly removed under 28 U.S.C. § 1441(B).  Although I conclude later in this opinion that Plaintiffs' constitutional rights were not violated, I may properly exercise supplemental jurisdiction over Plaintiffs' state law claims, including the administrative appeal, pursuant

to 28 U.S.C. § 1367.  See City of Chicago v. International College of Surgeons, ___ U.S. ___, 1997 WL 764505 (Dec. 15, 1997).  Because the administrative appeal claim is the most straightforward and provides Plaintiffs with all of the relief they seek, it will be addressed first.

### Count III:  The Administrative Appeal

A. The Board's Jurisdiction to Reconsider
the Petition's Sufficiency

Plaintiffs first argue that the commissioners lacked the ability to reconsider their prior determination that the conditions for incorporation of Spaceport City had been met.  Citing N.M.S.A. § 3-2-5(C), Plaintiffs maintain that the Board's jurisdiction over the petition's sufficiency terminated on July 13, 1997, the fifteenth day following the filing of the census.  Yet "it is well established in New Mexico that the filing of a proper petition for incorporation is jurisdictional and objections to the petition's sufficiency may be raised at any time."  Citizens for Incorporation, Inc. v. Board of Bernalillo County Comm'rs, 115 N.M. 710, 714 (Ct. App. 1993) ("Citizens").  Thus, until the matter was put to election, the commissioners were not estopped from questioning whether the petition sufficiently met the statutory prerequisites to support the Board's subject matter jurisdiction.  Id. at 714-15.  Plaintiff's laches arguments are likewise unmeritorious.

B. The Board's Finding that Only Residents
May Sign an Incorporation Petition

The commissioners wanted to assure that any incorporation election would be insulated from later attack on the grounds that the Board lacked jurisdiction to direct that the incorporation election be held.  The Board's finding of deficiencies in the May 1997 petitions include:

      (1)      they did not contain addresses of the signatories;

      (2)      they did not contain the "subscribed and sworn" language required by N.M.S.A. § 3-1-5 C (4), which includes a warning that any person "signing a petition when that person knows he is not a qualified elector in the municipality is guilty of a fourth degree felony" under New Mexico law; and

      (3)      their form was not approved by the county clerk prior to circulation.

In short, the commissioners determined that the general requirements of N.M.S.A. § 3-1-5 apply to **any** petition brought under the Municipal Code (Chapter 3), even if another section of the Code specifically addresses requirements for a certain type of petition.

      Legal counsel for the commissioners were relying on two authorities for this proposition. First, the New Mexico Attorney General had taken the position that the use of the term "resided" in § 3-2-1 A(4)(a) indicates that only those persons who are domiciled in the area to be incorporated may validly sign a petition for incorporation. 1953-54 Op. Atty. Gen. No. 6018. Second, the New Mexico Court of Appeals stated that where "there is no conflict between Sections 3-1-5 and 3-2-1 . . . . we construe Section 3-2-1 as providing additional requirements for petition for incorporation, and not as superseding those of Section 3-1-5." Citizens, 115 N.M. at 716. As the Citizens court noted, however, "[i]f the statutes can be harmonized so that each can be given effect, this Court should do so." Only when the statutes conflict should the more specific statutory provision govern and be considered the exception to the dictates of the general statute. Id.

      Unlike the Citizens case, the present plaintiffs are not seeking incorporation as "qualified electors" under § 3-2-1 A(4)(a). Rather, Plaintiffs have chosen the alternative avenue provided under § 3-2-1 A(4)(b) for tax-paying owners of the area to petition for its incorporation. Defendants strain to argue that subsection (b) of this specific statute presents no conflict with the general requirements

of § 3-1-5 if only "resident" tax-paying owners are qualified to sign the petition.  Yet if the legislature had intended that reading of subsection (b), it simply could have inserted the word "resident" before "owners."  "We ought not read language into a statute where . . . the statute makes sense as written." Wellborn Paint Mfg. v. New Mexico Employment Sec. Dep't, 101 N.M. 534, 539 (Ct. App. 1984).

Defendants further contend that because the initial sentence of the specific statute § 3-2-1 authorizes "residents" of a territory to petition for incorporation, **only** residents may sign the petition. Again, this interpretation would require me to insert the word "only" where the legislature chose not to do so.  It would also force me to ignore the clear disjunctive structure of subsection (4) establishing that the petition shall be signed "**by either**:  (a) not less than two hundred qualified electors . . . ; **or** (b) the owners of not less than sixty percent of the real estate . . . ."  Defendants' convoluted  reading of § 3-2-1 can only be performed by a talented contortionist also capable of magically inserting words that are absent.  In short, the Board's determination that non-resident owners could not sign a municipal incorporation petition was erroneous, and those signatures could not be invalidated solely on that basis.

C.  Other Asserted Deficiencies in the Form
    of the Petition

The New Mexico Court of Appeals recently held that the specific notice requirements for publication and notice of annexation hearings before a commission override the general notice requirements set forth in Municipal Code § 3-1-2(J).  See Cox v. Municipal Boundary Comm'n, ___ N.M. ___, 1998 WL 67203 (Jan. 19, 1998).[3]  "Without a clear indication that the legislature intended such a duplication of effort [to require compliance with the notice requirements of both the

---

[3] This decision was delivered after the parties had completed their briefing on the pending motions.

general and specific statutes], we are reluctant to interpret statutes so as to complicate proceedings and increase their costs." Id. at *6.

I, too, am hesitant to find that an incorporation attempt brought under subsection (b) of § 3-2-1 A(4) is subject to general requirements such as the clerk's pre-approval of the petition. Indeed, since non-resident owners may sign a petition under subsection (b), it would be patently absurd to incorrectly inform them that they are committing a crime by signing the petition because they are not qualified electors. Therefore, I find that the commissioners improperly found that the Spaceport City incorporation attempt deficient under subsection (b) of § 3-2-1 A(4) on grounds that the petitions failed to additionally satisfy the general form technicalities of § 3-1-5.

D.    Plaintiffs' Entitlement to Relief and the Remedy

As signers of the petitions, Plaintiffs have properly brought this administrative appeal pursuant to N.M.S.A. § 3-2-5 F. The Spaceport City incorporation petitions properly invoked the Board's jurisdiction and supported its July 1, 1997 determination that Plaintiffs had satisfied the statutory requirements for an incorporation election. But for the Board's erroneous rescission of that determination, the issue would have been placed on the January 1998 ballot; only certain ministerial actions remained--those of proclaiming, conducting and canvassing the election. Clearly, Plaintiffs are entitled to a municipal incorporation election for Spaceport City.

Defendants contend that N.M.S.A. § 3-2-5 E mandates that the earliest any municipal incorporation election can be held is January 1999 (an odd-numbered year) and that "[a]ny Order to the contrary violates this express statutory language." Yet such a reading would deprive this Court

of the ability to provide Plaintiffs with the "plain and speedy" remedy to which they are entitled.[4] Plaintiffs persuasively argue that delaying the election until 1999 could be prejudicial to their effort.

I do not believe that the provision setting forth general elections for municipal incorporations precludes me from directing, when I deem it necessary to preserve Plaintiffs' rights, that a special election on the Spaceport City incorporation be held earlier than the next statutorily-scheduled date. Therefore, the Court will order that the Board submit a timetable for assuring that all ministerial and publication requirements are completed for the issue to be placed before the voters at the soonest practical date.

### Count II:  Violations of Sections 1983 and 1985

To the extent that Plaintiffs assert a deprivation of due process, their claims are precluded by the availability of a quintessential post-deprivation remedy. The ability to appeal the Board's determination granted to the "signers of the petition" in § 3-2-6 F provides Plaintiffs with an adequate state remedy. The appeal process provides Plaintiffs with a right to correct an erroneous determination by the commissioners as to the legal sufficiency of the incorporation attempt. See Parratt v. Taylor, 451 U.S. 527 (1981).

Plaintiffs further assert violations of the First Amendment right to redress and equal protection. In Meyer v. Grant, 486 U.S. 414 (1988) ("Meyer"), a unanimous court struck down a Colorado law that criminalized using a paid circulator of a petition to get an initiative placed on the ballot. The Meyer court "fully agree[d] with the [Tenth Circuit] Court of Appeals' conclusion that

---

[4] Indeed, as discussed below, I have accepted Defendants' argument that a due process claim will not lie because the administrative appeal process provides an adequate remedy for deprivation of Plaintiffs' interest in holding the election to which they are entitled.  Seeing that the election is held "in a timely manner" is necessarily part of the equation in determining the adequacy of the remedy.

this case involves a limitation on political expression subject to exacting scrutiny." Id. at 420.  As later noted by the Tenth Circuit, "even though the initiative and referendum process is not guaranteed by the United States Constitution, Colorado's choice to reserve it does not leave the state free to condition its use by impermissible restraints on First Amendment activity." American Constitutional Law Found., Inc. v. Meyer, 120 F.3d 1092, 1100 (10th Cir. 1997).

In a case relied upon by Defendants, Wright v. Mahan, 478 F. Supp. 468 (E.D. Va. 1979), the court concluded that "a right to petition for, have access to the ballot for, and vote in a municipal initiative election is a wholly State created right" and is not constitutionally guaranteed by the First or Fourteenth Amendment. Id. at 474.  Since the Wright decision, however, the Supreme Court has given federal courts greater guidance in Meyer regarding the extent of constitutional protections for a wholly state created right.

> Although Meyer dealt with a limitation on communication with voters and not with methods used to validate and invalidate signatures of voters to an initiative petition, the principle stated in Meyer is that a state that adopts an initiative procedure violates the federal Constitution if it unduly restricts the First Amendment rights of its citizens who support the initiative.  Accordingly, we conclude that although the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution . . . .

Taxpayers United for Assessment Cuts v. Austin, 994 F.2d 291, 295-96 (6th Cir. 1993).

The problem in the present case lies in Plaintiffs' obligation to demonstrate a violation of the First or Fourteenth Amendment.  As properly construed above, the New Mexico legislature has bestowed on nonresident owners the right to join in a municipal incorporation attempt.  Plaintiffs' alleged constitutional injury arises from the commission's misinterpretation of the Municipal Code

and the resulting invalidation of signatures strictly on the basis that they are not residents of the area for which incorporation was sought.

Whether characterized as a violation of an equal protection or freedom of participation in the political process, I am unconvinced that Plaintiffs have shown a claim of constitutional dimension under § 1983. Plaintiffs concede that they are not questioning the constitutionality of the Municipal Code provisions. Instead they argue that by misconstruing the statutes, the commissioners have arbitrarily and capriciously **applied** certain requirements to landowners in this case.

Yet, an equal protection claim of selective application of facially lawful state regulation requires that Plaintiffs demonstrate that the selective treatment was motivated by intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit exercise of constitutional rights or by malicious or bad faith intent to injure. FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2nd Cir. 1992). Far from "invidiously discriminating" against the landowners, the record evinces a desire by the commission to protect a successful incorporation attempt from later attack.

All of the evidence in the record indicates that the Board's action in rescinding its approval was rational, but unfortunately based on an erroneous premise. I find that the evidence could support only a finding that the Board attempted to apply the Municipal Code provisions in good faith. At best, the commissioners' conduct can be characterized as "negligent" conduct, which is insufficient to deprive one of a constitutionally protected interest. See Daniels v. Williams, 474 U.S. 327 (1986). Therefore, Defendants are entitled to judgment as a matter of law on Count II for violations

of 42 U.S.C. § 1983 and § 1985.  Because the remaining Counts I and II are properly brought only against the Board, the commissioner defendants individually will be dismissed from this action.

An order in accordance with this opinion shall be entered.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiffs: | Kyle W. Gesswein<br>Bates Law Firm<br>Las Cruces, New Mexico |
| | Daniel A. Gonzales<br>Dan A. Gonzales Law Office<br>Las Cruces, New Mexico |
| Counsel for Defendants: | Leonard J. Piazza<br>Thomas A. Sandenaw, Jr.<br>Law Office of T. A. Sandenaw<br>Las Cruces, New Mexico |